IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AAA HAWAII, LLC, a limited liability company,<br><br>    Plaintiff-Counterclaim<br>    Defendant,<br><br>  vs.<br><br>HAWAII INSURANCE CONSULTANTS, LTD., a Hawai`i corporation, and AIG HAWAII INSURANCE COMPANY, INC., a Hawai`i corporation,<br><br>    Defendants-<br>    Counterclaim Plaintiffs.<br>_____ | CV. NO. 08-00299 DAE-BMK |

ORDER GRANTING IN PART AND DENYING IN PART AAA HAWAII'S MOTION TO DISMISS AND ORDER GRANTING DEFENDANTS LEAVE TO SEEK TO AMEND THEIR COUNTERCLAIM

On November 10, 2008, the Court heard Plaintiff-Counterclaim Defendant's Motion to Dismiss the Counterclaim. Clyde J. Wadsworth, Esq., appeared at the hearing on behalf of Plaintiff; Joseph A. Stewart, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS IN PART AND

DENIES IN PART AAA Hawaii's Motion to Dismiss AND GRANTS Defendants leave to seek to amend their Counterclaim.

## BACKGROUND

In February 1994, Hawaii Insurance Consultants, Ltd. ("HIC") and AIG Hawaii Insurance Company, Inc. ("AIG") (together, the "Defendants" or "HIC/AIG") entered into a marketing agreement with Plaintiff AAA Hawaii LLC and its predecessors ("AAA Hawaii").  The purpose of the agreement was to promote personal and commercial insurance products to AAA Hawaii members (the "1994 Agreement").  Under the 1994 Agreement, Defendants had the exclusive right to engage in direct marketing of these insurance products to AAA Hawaii members.  AAA Hawaii would assist in marketing efforts by supplying membership master files, lending its name to marketing materials, and providing available information for Defendants to produce rate quotations for various products.  In return, Defendants agreed to pay AAA Hawaii monthly commission fees on all HIC insurance policies acquired by AAA Hawaii members during the term of the 1994 Agreement.  Such payments would continue after termination of the 1994 Agreement for so long as there were at least 1,000 policyholders who became HIC insureds under the 1994 Agreement.  Defendants also agreed to pay an annual profit sharing bonus to AAA Hawaii when certain criteria were met.

Over the next five years, Defendants paid monthly commissions and annual profit sharing bonuses to AAA Hawaii under the terms of the 1994 Agreement without objection.

In February 1999, the parties entered into a new integrated contract (the "1999 Agreement"). The terms of the 1999 Agreement were in relevant part the same as those of the 1994 Agreement. Again, over the following five years, Defendants continued to pay AAA Hawaii monthly commissions and annual profit sharing bonuses without objection.

Pursuant to the terms of the 1999 Agreement, AAA Hawaii gave notice of its election to terminate the 1999Agreement as of December 6, 2005. On that date, the parties began directly competing with each other for sale of insurance products.

Almost a year and a half after termination of the 1999 Agreement, Defendants informed AAA Hawaii that they would no longer pay commissions and profit sharing bonuses. Furthermore, AIG advised that it had inadvertently overpaid AAA Hawaii for commissions throughout the term of the 1999 Agreement. AIG claimed they had mistakenly paid commissions for policies sold as a result of independent marketing efforts unrelated to the parties' 1999 Agreement.

AAA Hawaii filed a Complaint on June 25, 2008, asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief to determine the validity of Defendants' overpayment allegations. The Defendants filed an Answer on August 18, 2008, and a First Amended Answer with Counterclaims for unjust enrichment and quantum meruit on September 2, 2008.  The Defendants claimed AAA Hawaii unjustly received the benefit of $956,629.21 worth of commissions due to inadvertent overpayment and Defendants were entitled to repayment of these monies.  Secondly, the Defendants claimed that during the period covered by the 1999 Agreement, Defendants' efforts increased AAA Hawaii's membership through referrals, membership drives, and directly paying AAA Hawaii membership fees for HIC/AIG policyholders.  As a result, Defendants claimed they were entitled to payment for the reasonable value of their efforts.

AAA Hawaii filed the instant motion on October 6, 2008, arguing that Defendants do not have a claim upon which relief can be granted.   (Doc. # 24.) Defendants filed an opposition on October 23, 2008, and AAA Hawaii filed its reply on October 30, 2008.

## STANDARD OF REVIEW

A motion to dismiss will be granted where the claimant fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Review is generally limited to the contents of the complaint. Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994). Where, as here, the motion to dismiss concerns claims asserted on a counterclaim, review is likewise limited to the contents of the counterclaim. Allegations of fact in the pleading must be taken as true and construed in the light most favorable to the claimant. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005). A complaint or counterclaim does not need to include detailed facts to survive a Rule 12(b)(6) motion to dismiss. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965. (2007). However, in providing grounds for relief, a claimant must do more than recite the formulaic elements of a cause of action. Id. at 1966. Claimant must include enough facts to raise a reasonable expectation that discovery will reveal evidence. In other words, a claimant must allege enough facts to state a claim for relief that is plausible on its face. Id. at 1974. "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

When a party attaches exhibits to a motion to dismiss,[1] the court ordinarily must convert the motion into a summary judgment motion so that the claimant has an opportunity to respond.  Parrino v. FHP, Inc., 146 F.3d 699, 706 n.4 (9th Cir. 1998).  However, where "an attached document is integral to the plaintiff's claims and its authenticity is not disputed, the plaintiff obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished."  Id.  Therefore, "a district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  Id. at 705 (quoting Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)); see also Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007).

---

[1] The Court recognizes that AAA Hawaii did not actually attach a copy of the 1994 or 1999 Agreement to their Motion to Dismiss.  The Agreements were, however, attached to the original Complaint.  Furthermore, Defendants extensively quoted from the Agreements in their Counterclaim and both parties consistently reference the Agreements.

In this case, Defendants' Counterclaim references the provisions of both the 1994 Agreement and 1999 Agreement between the parties. (Counterclaim ¶¶ 16-26.) Because these Agreements define the rights and obligations of the parties, their provisions in their entirety are essential to the Counterclaim. Furthermore, neither party disputes the authenticity of the Agreements. In fact, both parties rely on the Agreements to support their claims. Accordingly, this Court will consider the 1994 and 1999 Agreements in ruling on AAA Hawaii's motion to dismiss.

## DISCUSSION

AAA Hawaii asserts that the Counterclaim should be dismissed because the parties' 1999 Agreement governs the subject matter of the Counterclaim and therefore precludes equitable remedies for unjust enrichment and quantum meruit. Plaintiff claims that the express provisions dictating AAA Hawaii's commission fee payments in the 1999 Agreement cover Defendants' unjust enrichment claim seeking restitution for inadvertent commission fee overpayments. AAA Hawaii also claims the Agreement defines the extent of each party's marketing obligations and therefore prevents Defendants from seeking compensation for rendering any promotional services under a theory of quantum meruit.

Claims for unjust enrichment and quantum meruit derive from principles of equity and quasi-contract.  See Porter v. Hu, 168 P.3d 994, 1007 (Haw. 2007); Hiraga v. Baldonado, 31 P.3d 222, 229 (Haw. 2001).  Hawai`i law has approved "the principle, long-invoked in the federal courts, that 'equity has always acted only when legal remedies were inadequate.'"  Porter, 169 P.3d at 1007 (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 509 (1959)).  The absence of an adequate remedy at law, therefore, is the "necessary prerequisite" to maintaining equitable claims.  Id. (quoting Bd. of Dirs. of the Ass'n of Apt. Owners of Regency Tower Condo. Project v. Regency Tower Venture, 635 P.2d 244, 249 (Haw. Ct. App. 1981)).

It is also well settled in federal courts that equitable remedies are not available when an express contract exists between the parties concerning the same subject matter.  See Klein v. Arkoma Prod. Co., 73 F.3d 779, 786 (8th Cir. 1996); Paracor Fin. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996); Gibbs-Brower Int'l v. Kirchheimer Bros. Co., 611 F. Supp. 122, 127 (N.D. Ill. 1985); Gerlinger v. Amazon.com, Inc., 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004).  Hawai`i law has recently endorsed application of this principle as well.  See Porter, 169 P.3d at 1007.  The purpose of the rule is to guard against the use of equitable remedies to "distort a negotiated arrangement by broadening the scope of the

contract." Gibbs-Brower Int'l, 611 F. Supp. at 127.  Where the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity.

I.       Unjust Enrichment

The Supreme Court of Hawai`i has stated that a valid claim for unjust enrichment requires only that a claimant prove that "he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust." Durette v. Aloha Plastic Recycling, Inc., 100 P.3d 60, 74 (Haw. 2004) (internal quotation marks, citation, and brackets omitted).

Defendants assert that during performance of the 1999 Agreement, HIC inadvertently overpaid AAA Hawaii approximately $956,629.21 in commission fees.  Defendants claim that such payments were mistakenly made for all AIG insureds, rather than merely for those AAA Hawaii members who became insureds as a result of the marketing efforts contemplated by the 1999 Agreement. HIC/AIG argue that because there is no provision of the 1999 Agreement which expressly requires Plaintiff to return any monies improperly paid, an unjust enrichment claim is appropriate.

This Court disagrees.  The issue is not, as Defendants characterize, whether and how AAA Hawaii should reimburse Defendants for alleged commission overpayments.  Rather, Defendants' unjust enrichment claim derives from a dispute over the contractual commission payment obligations themselves.  In fact, Defendants explicitly state in their Counterclaim that the basis of their claim for unjust enrichment is "significant overpayments <u>under the terms of the 1999 Agreement</u>."  (Counterclaim ¶ 40.) (emphasis added).

Defendants' payment obligations are clearly governed by Article V and Schedule B of the 1999 Agreement.[2]  These provisions define the circumstances under which commission fees should be paid to AAA Hawaii and how to calculate their amount.  Contract law -- not equity -- is thus the proper forum for any claims regarding the amount of commission fees owed under the 1999 Agreement.  Accordingly, because a valid express contract exists between the parties that covers the same subject matter as the unjust enrichment claim, the action for unjust enrichment is inappropriate.

---

[2] Section 5.1 of the 1999 Agreement reads:
> HIC shall pay to AAA Hawaii the fees set forth in Schedule B attached hereto and made a part hereof for AAA Hawaii's performance of duties described in this Agreement including, but not limited to, the production and timely delivery of AAA Hawaii's Member Lists.

10

Defendants argue that the decision in <u>Porter</u> dictates a different reading of the contract language. In <u>Porter</u>, independent insurance agents brought claims for breach of contract and unjust enrichment against an insurer that wrongfully retained the agents' books of business after terminating their employment. <u>Porter</u>, 169 P.3d at 1007. The agents' contracts had language concerning termination for certain specified causes. <u>Id.</u> at 1006. The provisions did not address, however, the agents' rights upon termination for causes outside of those specifically enumerated. <u>Id.</u> The court recognized that the contract "did not expressly address the compensation of an agent who wrongfully lost his book of business as a result of the parent insurer's misconduct" and allowed the unjust enrichment claim to stand. <u>Id.</u> at 1007.

In this case, however, Defendants' Counterclaim relies on an argument that the payments were excessive in the first place, a question of contract interpretation and not equity. The language of the 1999 Agreement specifically articulates under what circumstances Defendants were to pay commission fees to AAA Hawaii, how often these payments were to occur, and what products triggered commissions. The 1999 Agreement, thus, governs claims relating to any payments and/or overpayments.

Although not binding authority, the decision in <u>Echostar DBS Corp. v. Gemstar-TV Guide International, Inc.</u>, No. 05 CIV 8510, 2007 WL 438088, at *8 (S.D.N.Y. Feb. 8, 2007), is instructive in this case due to similarities in both facts and legal arguments.  In <u>Echostar</u>, the parties entered into a "C-Band Agreement" in which the defendants were appointed as authorized representatives to promote and solicit orders for plaintiffs' television programming from individuals who were existing C-Band subscribers.  <u>Id.</u> at *1.  Defendants agreed to pay plaintiffs commissions for each order that resulted in activation of a subscriber.  <u>Id.</u>  Plaintiffs claimed that due to defendants' failure to live up their contractual obligations, plaintiffs overpaid commissions for subscribers who were not properly qualified under the agreement.  <u>Id.</u>  As a result, plaintiffs sued for, among other things, unjust enrichment.  <u>Id.</u>

In language nearly identical to that used in this case, the plaintiffs in <u>Echostar</u> argued the C-Band Agreement did not preclude their unjust enrichment claim because the agreement "did not address how overpaid commissions were to be dealt with after termination of the Agreement."  <u>Id.</u> at *8.  The court disagreed with plaintiffs' argument, concluding that plaintiffs had "merely re-characterized [defendants'] duty not to breach the C-Band Agreement's Subscriber commission provisions as a duty to reimburse [plaintiffs] for commission overpayments . . . ."

12

Id.  The court found these two duties "one and the same" and dismissed the unjust enrichment claim.  Id.

Here, Defendants have similarly re-characterized commission payment duties that already exist under the contract in order to bolster a claim for unjust enrichment.  As such, it is irrelevant that the 1999 Agreement is silent as to AAA Hawaii's duty to return money that was improperly paid to it.  The true issue is whether payments should have been made under the terms of the 1999 Agreement at all and in what amount.  Accordingly, Defendants' unjust enrichment claim is precluded by the existence of a contract governing the subject matter.

The Court is aware that dismissal of the unjust enrichment claim potentially leaves Defendants without an affirmative remedy to recover the alleged overpayments.  Indeed, Defendants' own description of the overpayments as "inadvertent" and "mistaken" may signify that an action for breach of contract is likely to fail as well.  As the Ninth Circuit has observed, however, "[s]ome rights may not be enforceable through such an affirmative remedy in court, and others may not be enforceable in court at all."  Save Our Valley v. Sound Transit, 335 F.3d 932, 947 (9th Cir. 2003) (discussing limits on affirmative remedies under 42 U.S.C. § 1983 and National Labor Relations Act).

Defendants are not left entirely without a remedy, however, as they have asserted the defense of setoff and/or recoupment. (Defs.' First Am. Answer ¶ 17.) Although not the "affirmative recovery" remedy Defendants prefer, setoff provides Defendants with an avenue to adjudicate their rights under the payment provisions of the 1999 Agreement.

In addition, this Court will allow Defendants to seek leave to amend their Counterclaim to instead allege a breach of contract claim. Defendants must file their motion to amend the Counterclaim on or before November 24, 2008.

II.     Quantum Meruit

Defendants assert that during the course of their marketing efforts, they engaged in activities -- referrals, membership drives, and directly paying AAA Hawaii membership fees for HIC/AIG policyholders -- which resulted in substantial increases in AAA Hawaii's membership. As a result, AAA Hawaii received a benefit in the form of increased membership dues and Defendants claim they are entitled to reasonable compensation for their services.

Under Hawaii law, "[t]he basis of recovery on quantum meruit is that a party has received a benefit from another which it is unjust for him to retain without paying therefor." Maui Aggregates v. Jack Reeder and Maui Paving Co., Inc., 446 P.2d 174, 176 (Haw. 1968). If a party receives a benefit from services

rendered by another, "the law reasonably implies a promise to pay on the part of the one who has received such benefit, such amount as it is reasonably worth." Id. (quotation omitted).

Because quantum meruit is equitable in nature, such claims are similarly precluded when a contract exists between the parties concerning the same subject matter.  See Gibbs-Brower, 611 F. Supp. at 127.

Here, the parties dispute whether the 1999 Agreement contains provisions dealing with these allegations.  The purpose of the 1999 Agreement was to facilitate marketing efforts to AAA Hawaii members.  The question, however, is whether the 1999 Agreement required AAA Hawaii to compensate Defendants for actions that increased AAA Hawaii's membership.

Paragraph 3.11 of the 1999 Agreement provides:

> 3.11   The parties agree that there is nothing in this Agreement that prevents HIC from marketing to non-AAA Hawaii Members an automobile insurance Product that includes emergency roadside services.  In connection with any joint HIC/AAA Hawaii marketing efforts, HIC agrees not to market, advertise, offer, quote or solicit any automobile insurance product that includes non-AAA Hawaii emergency roadside service or towing services.

The paragraph clearly contemplates that Defendants will market insurance products to non-AAA Hawaii members. The paragraph does not, however, address the situation alleged in Defendants' quantum meruit claim, i.e. circumstances where HIC/AIG actually added new AAA Hawaii members as a result of this independent marketing effort.

None of the other provisions of the 1999 Agreement address interactions with non-AAA Hawaii members, nor do they contemplate referrals or compensation for such referrals. The contract is, thus, silent as to the allegations in the quantum meruit claim. Accordingly, the existence of the 1999 Agreement does not preclude Defendants from pursuing their action in quantum meruit.

Viewing Defendants' allegations of fact in the light most favorable to them, this Court finds Defendants have met their burden. HIC/AIG contend AAA Hawaii received the benefit of additional members and their corresponding membership dues, and assert it would be unjust for AAA Hawaii to retain such benefits without paying the reasonable value of services rendered. Accordingly, this Court DENIES AAA Hawaii's motion to dismiss the quantum meruit claim.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Plaintiff-Counterclaim Defendant AAA Hawaii's Motion to Dismiss AND GRANTS Defendants leave to seek to amend their Counterclaim.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, November 12, 2008.



_____
David Alan Ezra
United States District Judge

AAA Hawaii, LLC v. Hawaii Insurance Consultants, Ltd. and AIG Hawaii Insurance Company, Inc., CV No. 08-00299 DAE-BMK; ORDER GRANTING IN PART AND DENYING IN PART AAA HAWAII'S MOTION TO DISMISS AND ORDER GRANTING DEFENDANTS LEAVE TO SEEK TO AMEND THEIR COUNTERCLAIM